# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:09cr320 |
| | : | |
| | : | (Judge Munley) |
| | : | |
| **v.** | : | |
| | : | |
| **ADOLPHUS MCNEIL,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court are various motions filed by the defendant. Having been fully briefed, they are ripe for disposition.

**Background**

On October 13, 2009, a grand jury in the United States District Court for the Middle District of Pennsylvania returned an indictment naming the defendant on six counts. Count I accuses the defendant of engaging in a conspiracy to distribute and possession with intent to distribute in excess of one hundred kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count II charges defendant with violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 by possessing marijuana with intent to deliver. Count III alleges that defendant used a communications facility in the commission of a felony under the Controlled Substances Act in violation of 21 U.S.C. § 843(b). Count IV charges defendant of possession of a firearm while being an unlawful user of controlled substances in violation of 18 U.S.C. § 922(g)(3). Count V contends that defendant violated 18 U.S.C. § 924(c) and 18 U.S.C. § 2 by

using a firearm in furtherance of drug trafficking crimes. Count VI seeks forfeiture of property used in the alleged crimes pursuant to 21 U.S.C. § 853.

Defendant filed the instant evidentiary motions in preparation of the pre-trial conference. The government then responded to those motions, bringing the case to its present posture.

**Discussion**

The court will address each motion filed by the defendant in turn.

### i. Defendant's Motion to Suppress

Defendant seeks to suppress statements taken from him after his vehicle was subjected to a traffic stop on April 12, 2008. After state troopers stopped defendant for driving without a license, he allegedly volunteered to them information about drugs in his residence. Using this information, police obtained a search warrant and seized marijuana, U.S. currency, digital scales, a rifle and marijuana packaging material. Defendant contends that he was arrested at this stop and therefore in custody at the time of his statement. That interview, he insists, occurred without the benefit of Miranda warnings or the presence of counsel and should be suppressed. The government argues that defendant was not arrested, but merely subjected to a routine traffic stop. Since the law is well-settled that a person detained for a traffic stop is not in custody for Miranda purposes, the statements should not be suppressed.

The Supreme Court has held that the Self-Incrimination Clause of the Fifth

Amendment "[bars] the introduction in federal cases of involuntary confessions made in response to custodial interrogation." Withrow v. Williams, 507 U.S. 680, 688 (1993). Courts have found that "a statement is involuntary when the suspect's 'will was overborne in such a way as to render his confession the product of coercion.'" Choi Chi Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002). To determine whether a confession was voluntary, "courts look to the totality of the circumstances." Withrow, 507 U.S. at 693. Such "potential circumstances include not only the crucial elements of police coercion," but also "the length of interrogation; its continuity; the defendant's maturity, education, physical condition, and mental health, [and] . . . the failure of the police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation." Id. at 693-94 (internal citations omitted).

There is no dispute here that defendant was not advised of his rights before he made his statement. At issue, however, is whether defendant was actually in custody when he spoke with police after the traffic stop. "[C]ustodial interrogation" is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Oregon v. Mathiason, 429 U.S. 492, 494 (1977) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Though the Third Circuit Court of Appeals has held that normally "the principles of Miranda have been held not to apply to the traffic stop context." United States v. Anderson, 859 F.2d 1171, 1177 (3d Cir. 1988), the

Supreme Court has found that "[i]f a motorist has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Berkemer v. McCarthy, 468 US. 420, 440 (1984); see also, United States v. Elias, 832 F.2d 24, 26-27 (3d Cir. 1987). The court must therefore inquire into "how a reasonable man in the suspect's position would have understood his situation" to determine whether the traffic stop constituted a routine stop or at some point transformed into a situation where defendant was "in custody" for Miranda purposes. Berkemer, 468 U.S. at 441.

Such an inquiry will require testimony from witnesses to determine the context of defendant's statements. The court will therefore schedule a hearing on defendant's motion. The defendant should be prepared to present witnesses at that time. The court will thereafter make a decision as to whether the statements were made at a time when defendant was in custody, and thus whether they should be suppressed. The accompanying order will provide a date for the hearing.

### ii. Motion to Exclude Latent Prints Expert

In this case, officers seized a firearm from the residence shared by the defendants in Wilkes-Barre, Pennsylvania. An examiner from the Pennsylvania State Police Bureau of Forensic Services tested the firearm for the presence of latent fingerprints and found no prints on the weapon. The government represents that it has supplied the defendant with a copy of this report and intends to call the

4

examiner to testify at trial. The government avers that the latent print examiner will testify based on her training and experience that no latent prints were found on the firearm, but that such absence is not unusual based on a variety of factors.

Defendant moves for the exclusion of testimony by the government's latent fingerprint expert that fingerprints are not recovered in the majority of cases like this one. He argues that the testimony fails to meet the Supreme Court's standards for admissibility of expert testimony because the expert's opinion that fingerprints are frequently not found in firearms cases will purportedly be based on the expert's past experience. Such past examinations of firearms, however, "are not identical to one another." (Defendant's Motion (Doc. 20) at 6). Such tests "involved different firearms, recovered under different conditions, examined at different time intervals after prints were deposited, handled by law enforcement in different manners, and possibly processed using different techniques." Thus, the opinion that examiners frequently fail to recover prints is not the sort of expert opinion that is testable, subject to peer review and generally accepted, and is thus inadmissible.

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facs or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Courts have described the function of the district court in determining whether to admit

expert testimony as a "gatekeeping" one. The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 598 (1993). Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a particular field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

The court will deny the motion. Defendant does not argue that the expert's actual examination of the fingerprints is inadmissible expert testimony, and courts have applied the Daubert and Kumho Tire tests and accepted latent fingerprint examiners as expert witnesses. See, e.g., United States v. Mitchell, 365 F.3d 215, 246 (3d Cir. 2004). Instead, defendant seeks to exclude testimony that attempts to explain the reason for the negative results of the expert's testing. Defendant does not dispute that the techniques the witness used to examine the latent fingerprints qualify as the source of an expert opinion under Dabuert. The witness will of course attempt to explain why no latent print appeared on the firearm, and cite to other cases in which she has experience or is aware of in that effort. To the extent that the expert has knowledge of the frequency of firearms without latent prints, the expert could testify to that knowledge. In the end, the question in dispute is why no

6

fingerprints appeared in this case. A jury will be left to decide the reasons for that absence, and any explanation the expert offers will be subject to a cross examination that will undoubtedly reveal any weaknesses in the evidence. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," after all, "are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

### iii. Jencks Act Material

The defendant seeks disclosure of all material covered by the Jencks Act, 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2. Defendant seeks this material by January 15, 2010. The government opposes defendant's motion, contending that the law compels disclosure of any statements or reports of statements by government witnesses only after that witness testifies at trial. As such, the government insists, it has no obligation to provide such information to the defendant before that witness testifies at trial. The government therefore opposes an order to turn over the material, but promises to make such statements available to the defense three days before trial.

The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Federal Rule of Criminal Procedure 26.2(a) likewise

7

provides that "[a]fter a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." FED. R. CRIM. P. 26.2(a). Courts have concluded that the statute requires disclosure of prior statements related to the subject of a witness's testimony "after each witness testifies on direct examination." United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). Disclosure of such statements "is mandatory if the defendant makes a timely motion." United States v. Hill, 976 F.2d 132, 140 (3d Cir. 1992). Thus, the defendant having filed a motion requesting such material, the government is required to provide any statements that qualify under the act. Such disclosure, however, is not required until after those witnesses testify. See United States v. Merlino, 349 F.3d 144, 155 (3d Cir. 2003) (Jencks Act "disclosures must be made *after* each witness testifies on direct examination.") (emphasis added).

To the extent that defendant seeks disclosure before the Jencks Act requires it, then, the motion will be denied as premature. The government, however, represents that it will provide the requested statements three days prior to trial as a means of promoting more efficient proceedings. The court agrees that this arrangement would be beneficial to all parties and encourages the government to abide by it.

8

### iv. Disclosure of Confidential Informants and Exculpatory Information

Defendant seeks disclosure of the identities of any informants who provided information leading to the issuance of a search warrant in this case. The defendant seeks information on whether an informant was or is a drug user; whether the informant was implicated in or involved in any illegal activity while working as an informant; what crimes the informant had been implicated in at the time the informing began; whether any criminal charges were altered or abandoned as a result of this cooperation; whether any financial arrangement existed with the informant; the substance of any plea bargain with the informant; the substance of any agreement not to charge an informant with a crime; information that would show bias or prejudice on the witness's part; past inconsistent or contradictory statements made by the informant on this case or any other case; information that shows that the informant was impaired in any way at a time relevant to the case; the circumstances of the agreement to cooperate; and the number of times the government or any other state or federal agency has used this particular informant. (See Doc. 22).

The government represents that it does not intend to call any confidential informants as witnesses, and that it has provided defendant with extensive pre-trial discovery, including copies of defendant's own prior statements, his prior criminal record, as well as other discoverable materials, such as police reports, search warrant affidavits, photographs, transcripts of telephone calls, grand jury transcripts, drug testing results, fingerprint reports, a firearms ballistics report and other items.

The government has also provided information about the cooperating witnesses expected to appear in the case. The government also promises to provide impeachment material to the defendant shortly before the trial.

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is either material to guilt or to punishment, irrespective of the good or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). The prosecution is "not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deny the defendant of a fair trial." United States v. Bagley, 473 U.S. 667, 675 (1985). Evidence is favorable if it is exculpatory or impeaching. Id. at 676. Under this standard, the prosecution has an obligation to surrender to the defendant any and all exculpatory evidence. See Kyles v. Whitley, 514 U.S. 419, 437-438 (1995) (Finding a Brady violation occurred when the government did not turn over evidence of contradictory witness statements before trial).

The government also has a duty to disclose any agreements or promises made with testifying witnesses. See Giglio v. United States, 405 U.S. 150 (1972) (holding that the prosecution's failure to disclose evidence that a key prosecution witness had received a deal for his testimony violated the defendant's due process rights and a new trial was ordered); Bagley, 473 U.S. 667 (finding that failure to disclose that a witness had contracted with two ATF agents for payment upon testifying violated the defendant's Brady rights); United States v. Thorton, 1 F.3d

10

149, 158 (3d Cir. 1993) (finding that a failure to disclose DEA payments to a witnesses fell under Brady). In order to comply with Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Id. at 437.

The court finds that the government is required to disclosure any potentially exculpatory or impeaching information in its possession immediately, and that this duty is ongoing. The government has apparently provided a great deal of Brady material already, but also represents that any additional impeaching information will be provided three days before the trial, along with material required under the Jencks Act. The government provides no reason why the relevant material could not be provided immediately or why it is necessary to delay such discovery until 72 hours before the trial. Such information may require more than three days for the defendant to examine and make use of, and absent a reason for delay it should be disclosed now, since Brady material should be "disclosed to [a defendant] in time for its effective use at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983); see also United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (describing the Third Circuit's "longstanding policy of encouraging early production" of Brady material); United States v. Kaplan, 554 F.2d 577, 581 (3d Cir. 1977) (finding it "preferable [though not reversible, as defendant made use of the documents at trial] to have permitted defense counsel to examine [potentially exculpatory documents] well in advance of trial . . . it certainly was not desirable and we do not encourage

it."); United States ex rel. Marzeno v. Gengler, 574 F.2d 730, 739 (3d Cir. 1978) (Seitz, CJ, concurring) (arguing that "a prosecutor's timely disclosure obligation with respect to [potentially exculpatory] material cannot be overemphasized if due process is to be afforded a defendant at trial."). The court will therefore grant the motion to the extent that the government is required to provide any material in its possession which is potentially exculpatory, could be used to impeach any prosecution witnesses or which provides evidence of any arrangement made with a prosecution witness in exchange for testimony. The government shall provide this material within two days of the date of this order.

Moreover, the government's duty to provide any relevant material is ongoing. The government has represented that it has no intention to utilize evidence from confidential informants. As such, the court will deny as moot that portion of defendant's motion which seeks the identity of confidential informants.

### v. Notice of Government's Intention to Rely on Other Crimes, Wrongs, Acts and Misconduct Evidence

Defendant seeks an order from the court directing the government to give pre-trial notice of its intention to introduce evidence alleging that the defendant has committed other crimes, wrongs, acts and misconduct pursuant to Federal Rule of Evidence 404(b). The defendant also seeks a list of all such evidence, including the names of witnesses, the dates of the events' occurrences, summaries of expected testimony, and any related documentary evidence. The government agrees that it

12

has a duty to provide notice of its intention to introduce such evidence, but objects to the scope of the defendant's request.

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). Such evidence, however, "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Id. "[U]pon request of the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." Id. The dispute here is over the level of specificity required in the government's notice.

The defendant has now requested notice from the government of its intention to introduce evidence pursuant to Rule 404(b). Rule 404(b) clearly requires the government to provide such notice. Because of the fast-approaching date of trial, the court will order the government to provide notice of its intention within two days of the date of this order. The court finds, however, that the question of whether notice was adequate is one better left for the time when the government seeks to introduce such evidence. The purpose of the rule is to provide defendant fair notice of the government's intent, and the court cannot know whether the defendant received fair notice until it understands the nature of the evidence and the nature of the notice. Neither side has provided that. Any ruling now would be premature,

13

and–since the adequacy of any notice is specific to the type of evidence and the context of its introduction–most likely advisory. Rather than attempt to imagine all of the different kinds of 404(b) evidence that might be introduced under these circumstances, the court will order the government to provide defendant notice of its intention to introduce such evidence. At minimum, this notice must provide a description of the "general" nature of the evidence, i.e., evidence of past drug transactions or past weapons violations.[1] The adequacy of that notice, as well the admissibility of the evidence, may be raised by the defendant at a more appropriate time.

### vi. Information Regarding Expert Witnesses

Defendant seeks the following information regarding expert witnesses from the government: 1) the name and address of every expert the government plans to call

---

[1] The court notes that the Third Circuit Court of Appeals has not ruled on how specific the notice provided by the government must be in order to be adequate under Rule 404(b). Other courts, however, have emphasized that the rule requires only "general" information on the evidence the government intends to introduce, and that "courts have not been stringent in this regard." United States v. Blount, 502 F.3d 674, 678 (7th Cir. 2007). The Tenth Circuit Court of Appeals, for instance, has found that notice to the defendant that the government "might offer 'prior and subsequent conduct involving the distribution of controlled substances'" was sufficient notice for a defendant accused of conspiracy to distribute a controlled substance. United States v. Russell, 109 F.3d 1503, 1508 (10th Cir. 1997). The court found that though "the government might have provided some additional detail of the many drug-related episodes it adduced, this statement describes the 'general nature' of the evidence the government" adduced at trial. Id. In United States v. Erickson, 75 F.3d 470 (9th Cir. 1994), the Ninth Circuit rejected a defendant's claim that he had insufficient notice of testimony about defendant's past medical fraud because the government had provided defendant with the witness's statements" and defendants thus "had pretrial notice of [the] potential testimony, though they did not know specifically what testimony the government planned to use." Id. at 478.

14

in its case in chief; 2) the curriculum vitae of each expert; 3) information on the last twenty trials in which each expert has participated, including the name and number of the case, the court where the case was tried, the party for whom the expert testified; whether the expert testified pursuant to a fee arrangement; and a summary of the expert's testimony; 4) a list of the past twenty cases where the expert was not qualified to testify by the trial court, and information about that proposed testimony; and 5) a similar list of the last twenty trials in which the expert was qualified to testify. The government notes that it has already supplied the names and addresses of its expert in chemistry, firearms examination and latent fingerprints. The government has also provided the names of various Drug Enforcement Administration agents and/or Task Force Officers who will testify about drug trafficking. The government also represents that it has supplied curricula vitae for these individuals, "to the extent that the information is available to the government." The other information requested by the defendant, however, far exceeds what the government claims is required under the federal rules, and the government objects to providing it. The government cites no case law to this effect, nor any federal rules.

Federal Rule of Criminal Procedure 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use" in expert testimony. FED. R. CRIM. PRO. 16(a)(1)(G). Such a summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. This

15

rule is intended to provide the defendant with "a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Advisory Committee Notes to 1993 Amendment of FED. R. CRIM. P. 16. The court will grant the defendant's motion. The summaries of previous testimony provided by the government need not be extensive, however. Those summaries should provide the subject of the previous testimony and the conclusion reached by the expert. Explanations of cases where the expert's testimony was not allowed should provide a brief explanation of the reasons for that exclusion, i.e., the testimony was deemed irrelevant. The government should keep in mind that the purpose of this disclosure is to provide defendant with an opportunity to challenge the expert's opinion and qualifications. See, e.g., United States v. Vallone, 101 A.F.T.R.2d 1169, at *6-*7 (N.D. Ill. 2008) (finding disclosure sufficient under Rule 16(a)(1)(G) when the government "not only disclosed the identity of its experts, but it also attached detailed curriculum vitae for each one, describing the Agents' education, work experience and previous trial testimony" because such information was "more than enough to put the Defendants on notice of the Agents' identity and to provide them with a meaningful opportunity to prepare for cross-examination on any issues involving the Agents' qualifications."); United States v. Shepard, 462 F.3d 847, 866 (8th Cir. 2006) (finding no prejudice even though government did not disclose that witness would serve as expert because government notified defendant witness would testify and provided "copies of prior, similar testimony.").

**Conclusion**

For the reasons stated above, the court will grant the defendant's motions in part and deny them in part. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:09cr320 |
| | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| ADOLPHUS MCNEIL, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 5th day of January 2010, the defendant's pre-trial motions are granted in part and denied in part, as follows:

1. The defendant's motion to exclude the government's latent prints expert (Doc. 20) is hereby **DENIED**;

2. The defendant's motion for disclosure of Jencks Act material (Doc. 21) is hereby **DENIED WITHOUT PREJUDICE AS PREMATURE**;

3. The defendant's motion for disclosure of confidential material and exculpatory information (Doc. 22) is **GRANTED** to the extent that the government is hereby **ORDERED** to provide the defendant with any potentially exculpatory or impeaching material in its possession or control within **TWO** days of the date of this order. The motion is **DENIED** as moot with respect to the defendant's request for the identities of any confidential informants;

4. The defendant's motion for notice of the government's intention to rely

upon other crimes, wrongs, acts and misconduct evidence (Doc. 23) is hereby **DENIED** without prejudice to the defendant raising the issue of the adequacy of the government's notice at the appropriate time;

5. The defendant's motion for disclosure of the government's experts' credentials (Doc. 33) is hereby **GRANTED**; and

6. An evidentiary hearing will be held on the defendant's motion to suppress his statements (Doc. 19) on Thursday, January 7, 2010 at 3 p.m.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**